UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Roberta B. Mack, | ) | C/A No. 3:15-2624-MGL-KDW |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| South Carolina Department of Transportation, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff Roberta B. Mack ("Plaintiff" or "Mack") filed this action against her employer, Defendant South Carolina Department of Transportation ("DOT") in state court, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, for filing a charge of discrimination and retaliation that led to the court's decision in *Mack v. South Carolina Department of Transportation*, C.A. No. 3:12-cv-2960-MGL [hereinafter "*Mack I*"]. Defendant removed the instant case [hereinafter "*Mack II*"] to this court. ECF No. 1. DOT filed a Motion for Judgment on the Pleadings, claiming this suit is barred by res judicata as the result of the court's grant of summary judgment in *Mack I*. ECF No. 17. Plaintiff responded to the Motion, ECF No. 21, and DOT filed a reply, ECF No. 22. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a report and recommendation ("Report") regarding the pending dispositive motion. Having reviewed the parties' submissions and the applicable law, the undersigned recommends DOT's Motion, ECF No. 17, be *granted* and this matter be ended.

I.      Background: *Mack I*, the 2011 EEOC charge and 2012 litigation

Plaintiff filed *Mack I* in this court on October 12, 2012, after exhausting administrative remedies by filing a charge of discrimination with the South Carolina Human Affairs Commission ("SHAC") and the United States Equal Employment Opportunity Commission ("EEOC"). Plaintiff filed an Amended Complaint on October 31, 2012. *See Mack I* Am. Compl., ECF No. 17-4.[1] In that 2011 charge, she alleged that she had been discriminated against because of race and in retaliation for complaining about race discrimination. *See* Aug. 26, 2011 Charge, ECF No. 17-3. Specifically, Plaintiff alleged that she "was denied equal wages from on or about December 1, 2009 through June 27, 2011, and continuing[ ]" and that she "was subjected to disparate terms and conditions and intimidated from on or about October 15, 2010, through on or about April 11, 2011, and continuing." *Id.* Further, Plaintiff indicated as follows:

> After I requested a salary analysis, I was moved from program manager to a new position. The format for the new position was never completed. The respondent refused to put me back in my old position and replaced me with a younger white female. Everyone else that was moved as a result of my transfer was compensated, but I was not. Additionally, the terms and conditions of the initial move were never fulfilled and I was transferred again. I complained and requested a salary analysis again. I believe the move to my current position was retaliatory in order to prevent me from receiving my compensation.

*Id.*
Following an investigation, both SHAC and the EEOC issued right-to-sue notices, and Plaintiff filed *Mack I*, alleging race discrimination and retaliation with respect to wages, *inter alia*. As relevant here, the Amended Complaint in *Mack I* alleged:

**FOR A FIRST CAUSE OF ACTION
AGAINST THE DEFENDANT SCDOT
(Race Discrimination in violation of Title VII)**

11. The plaintiff realleges paragraphs 1 through 10 aforesaid.
12. Since 2009, there has been in place a pervasive and invidious policy of race discrimination employed by SCDOT which has resulted in agency reorganizations

---

[1] Unless otherwise stated, references to an ECF No. refers to the ECF No. in *Mack II*.

favoring white employees over black females and in which the plaintiff has been repeatedly discriminated against in terms of pay[,] promotion and working conditions.

13. In 2009 as well as again in 2012, plaintiff complained to her supervisors and others that the reorganizations were unfair and that she and other African-American females were being discriminated against as a result.

14. The complaints of the plaintiff went unheeded and even though she was promised relief and increases in pay for the various functions that she was called upon to perform, including functions that less qualified white females were unable to perform in which plaintiff had to assist, she never received any meaningful job description, promotion or increase in pay.

15. As late as 2011, plaintiff was again promised increases in pay and after making her position known that she was being discriminated against because of her race, yet disparity in pay continued and continues to the present time with the plaintiff receiving far less compensation than her white counterparts who are less qualified and not as effective in their jobs.

16. Such treatment is racially discriminatory and violates Title VII of the 1991 Civil Rights Act and amendments thereto.

17. As a direct and proximate result of such discrimination, plaintiff has lost substantial income and continues to lose the same, plaintiff's earning capacity has been diminished by the same and plaintiff has sustained embarrassment, humiliation and mental anguish because of the repeated failure of SCDOT to properly pay her and to discriminate against her. Plaintiff is also entitled to an award of attorney's fees and costs.

### FOR A SECOND AND SEPARATE CAUSE OF ACTION
### AGAINST THE DEFENDANT SCDOT
### (Retaliation in violation of Title VII)

18. The plaintiff realleges paragraphs 1 through 17 aforesaid.

19. While others within the department have received appropriate adjustments and job descriptions and increases in pay the plaintiff has been overlooked and bypassed intentionally as a direct result of her repeated efforts in the past to report her opposition to the discriminatory processes employed by SCDOT in dealing with white employees and opposed to black female employees.

20. This conduct constitutes forbidden retaliation for opposing discrimination as provided by Title VII of the 1991 Civil Rights Act and amendments thereto.

21. As a direct and proximate result of such retaliation, the plaintiff has lost substantial income and continues to lose the same, plaintiff's earning capacity has been diminished by the same and plaintiff has sustained embarrassment, humiliation and mental anguish because of the repeated failure of SCDOT to properly pay her and to discriminate against her. Plaintiff is also entitled to an award of attorney's fees and costs.

*Mack I* Am. Compl. ECF No. 10 (in that case; copy also available at ECF No. 17-4).

In March 2014, Plaintiff brought a second charge with the EEOC while *Mack 1* was still pending. ECF No. 17-5 (dated March 10, 2014—the "2014 Charge"). In the 2014 Charge, Plaintiff checked only the box for "retaliation." She lists the dates as January 31, 2013 at the earliest, May 29, 2013, at the latest, and "continuing." *Id.* In the narrative section of the 2014 Charge, Plaintiff described the "particulars" of her claim as follows:

> Since filing my charges of discrimination against SCDOT (06-27-2011 and received federal Right to Sue 07-18-2012 and filed a lawsuit 10-12-2012), I have been retaliated against in that I have continued to be passed over for jobs that I apply for and am qualified to perform. I have not been considered for interview nor interviewed for any of the positions I have applied for. I believe because of the lawsuit I filed for my claims of discrimination (race and retaliation), I further have been retaliated against.
>
> I believe I have been retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

2014 Charge, ECF No. 17-5.

On March 28, 2014, DOT filed a motion for summary judgment in Mack I, Mack I ECF No. 43, to which Plaintiff responded on April 14, 2014, Mack I ECF No.46.

On April 22, 2014, Plaintiff's counsel wrote the EEOC to request that Plaintiff's 2014 Charge be amended to include this allegation: "Since [Plaintiff's] filing with the EEOC, [Defendant] has further retaliated against our client by refusing her a salary equity analysis on the basis that she filed her discrimination lawsuit." Apr. 22, 2014 Ltr. from J. Lewis Cromer & Associates to EEOC Investigator Whiteside, ECF No. 17-6 at 2. The letter attaches an excerpt from the *Mack I* deposition of DOT Human Resources Director, Mary Gail Monts-Chamblee, which states in relevant part as follows:

> Q: Okay. Do you intend now to place Roberta Mack's paperwork for the salary equity analysis that you've said has essentially been on hold before the appropriate personnel for signatures, or to develop the paperwork and then place it before the personnel?
> A: At this time, I don't – I don't know that I would.

4

>Q: And why is that?
>A: Going through this situation, I think we need to resolve this issue.
>Q: Regarding this lawsuit?
>A: Yes.
>Q: Okay. So were there no lawsuit, the paperwork would be developed and placed before the appropriate personnel?
>[Defense counsel]: Object to the form.
>Q: You may answer the question.
>A: We would have a discussion about it.
>Q: But for the reason this lawsuit is pending, there has been no movement on that - - -
>A: That's - - -
>[Defense counsel]: Object to the form of the question.
>A: At this point, we have not submitted anything.

ECF No. 17-6 at 3-4. That deposition was taken on March 4, 2014.

On September 15, 2014, Plaintiff's counsel requested a right-to-sue notice on the 2014 Charge. ECF No. 17-7.

On January 9, 2015, The U.S. Department of Justice issued Plaintiff a right-to-sue notice. ECF No. 17-8.

On March 23, 2015, the court granted summary judgment in *Mack I*. ECF No. 62 in *Mack I*, copy available at ECF No. 17-9 herein.

On April 15, 2015, Plaintiff began *Mack II* in state court. Defendant removed it on July 1, 2015. ECF No. 1. *Mack II*'s only cause of action is for retaliation:

>FOR A FIRST CAUSE OF ACTION
>AGAINST THE DEFENDANT DEPARTMENT
>(Retaliation in [] Violation of Title VII)
>
>Salary Equity Analysis
>
>28. Where not inconsistent herein, Plaintiff realleges the foregoing.
>29. Plaintiff filed a lawsuit alleging race discrimination and retaliation under Title VII on October 12, 2012.
>30. Plaintiff's conduct in initiating a legal action under Title VII constitutes protected activity under Title VII.
>31. Since filing that lawsuit, Plaintiff was and has been continuously denied a due salary equity analysis because of her protected activity.

5

32. Had a salary equity analysis been performed, or performed properly, it would indicate that the Plaintiff is due to receive pay commensurate to Mrs. Wendy Hollingsworth, who is a valid comparator to the Plaintiff.

33. The Defendant Department has refused to provide the Plaintiff with a properly performed salary equity analysis on the basis of her protected activity. The same constitutes unlawful retaliation in violation of Title VII.

Failure to Promote

34. Plaintiff applied for a position in May, 2013 for which she was qualified.

35. That position was given to a lesser qualified white male.

36. The job posting was narrowly tailored to preclude the Plaintiff from receiving it in the midst of and because of her protected activities.

37. The same constitutes unlawful retaliation in violation of Title VII.

38. The Defendant Department has directly and proximately caused the plaintiff damages including back pay, front pay, lost earing capacity, pre-judgment interest, pain and suffering, humiliation and mental anguish, and the reasonable costs and fees of prosecuting this action. Plaintiff is also entitled to injunctive relief to include a properly performed salary equity analysis.

Compl. ¶¶ 28-38, ECF No. 1-1.

Defendant answered and filed the Motion for Judgment on the Pleadings that is now under consideration.

II.     Standard of review: Motion for judgment on the pleadings

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as that used for a motion for failure to state a claim under Rule 12(b)(6). *Burbach Broad. Co. of Del. v. Elkins Radio Corp.,* 278 F.3d 401, 405 (4th Cir. 2002).

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). The court measures the legal sufficiency by determining whether the complaint meets the Rule 8 standards for a pleading. *Id.*

6

The Supreme Court considered the issue of well-pleaded allegations, explaining the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . .

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)). When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). The court is also to "'draw all reasonable inferences in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). Although a court must accept all *facts* alleged in the complaint as true, this is inapplicable to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citation omitted). While legal conclusions can provide the framework of a complaint, factual allegations must support the complaint for it to survive a motion to dismiss. *Id.* at 679. Therefore, a pleading that provides only "labels and conclusions" or "naked assertion[s]" lacking "some further factual enhancement" will not satisfy the requisite pleading standard. *Twombly,* 550 U.S. at 555, 557. Further, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

7

At bottom, the court is mindful that a complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Coleman v. Md. Ct. of Apps.,* 626 F.3d 187, 190 (4th Cir. 2010) (internal quotation marks omitted).

III.    Analysis

Defendant moves for judgment on the pleadings, arguing that, pursuant to the doctrine of res judicata, the court's ruling in *Mack I* bars this case as a matter of law.

The guiding federal principles of res judicata applicable here are not in dispute. The doctrine of res judicata, or, as it is sometimes referred, claim preclusion, holds that a final judgment on the merits in one action precludes the same parties (and those in privity with them) from subsequently relitigating claims that were or could have been raised in the first action. *Pueschel v. U.S.*, 369 F.3d 345, 354 (4th Cir. 2004). Whether a prior federal court judgment precludes litigation of claims in a subsequent federal court action between the same parties is determined by federal common law. *See Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law."); *U.S. ex rel. May v. Purdue Pharma, L.P.*, 737 F.3d 908, 912 (4th Cir. 2013) ("The preclusive effect of a judgment issued by a federal court is a legal question governed by federal law . . . .").

The parties do not dispute that the first two requirements are satisfied: *Mack I* resulted in a final judgment; and the parties are the same in both cases. *See* Def.s' Mem. 6-8, Pl.'s Mem. 3. At issue here is whether the claims now raised in *Mack II* "were or could have been raised" in *Mack I*. In determining this, the court considers whether the claims now raised "are based upon the same cause of action involved in the earlier proceeding." *Serna v. Holder*, 559 F. App'x 234 (4th Cir. 2014). The Fourth Circuit has explained that "the appropriate inquiry . . . is whether the claim presented in the new litigation 'arises out of the same transaction or series of transactions

8

as the claim resolved by the prior judgment.'" *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999) (quoting *Harnett v. Billman,* 800 F.2d 1308, 1313 (4th Cir. 1986) and citing *Restatement (Second) of Judgments* § 24 (1982)). Further,

> [t]he expression "transaction" in the claim preclusion context connotes a natural grouping or common nucleus of operative facts. Determining whether claims are based on the same cause of action is a fact-bound and practical task, and [a]mong the factors to be considered . . . are [the claims'] relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes.
>
> Of particular importance . . . , we focus on the core of operative facts for the plaintiff's claims and causes of actions, not the legal labels attached to them, when applying the transactional approach to claim preclusion. Were we to focus on the claims asserted in each suit, we would allow parties to frustrate the goals of [claim preclusion] through artful pleading and claim splitting given that [a] single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law.

*Serna*, 559 F. App'x at 237-38 (internal quotations and citations omitted; alterations other than second ellipses in original).

Here, Defendant argues the claims included in the 2014 Charge and in *Mack II* could have been raised in *Mack I* as the *Mack II* claims are Title VII retaliation claims involving similar injuries—lost pay and foregone promotions—as the result of participating in protected activities. Def.'s Mem. 9-11 (citing extensively to *Serna*). In *Serna*, the Fourth Circuit found successive Title VII retaliation lawsuits "were based on the same cause of action." 559 F. App'x at 238. The court noted the two suits concerned the same type of alleged wrongdoing and "similar injuries: denial of promotion, transfer, and temporary duty assignment." *Id*. Further, "the language of the amended complaint in the first lawsuit encompassed, at least in part, Serna's allegations in her second suit[, noting] Serna broadly alleged retaliation designed to punish [her] for seeking redress for the violation of her civil rights." The *Serna* court concluded that, although "the two complaints do not literally allege the exact same thing[,] . . . whatever differences of

9

emphasis may exist between the two lawsuits do not suffice to defeat claim preclusion, which is intended to prevent the sort of dribbling of claims from earlier lawsuits to later ones that occurred here." *Id.* at 238-39.

Defendant appropriately notes that, in large measure, the facts here are like those in *Serna*. However, Plaintiff correctly points out a difference in timing that merits further analysis. *See* Pl.'s Mem. 10. In *Serna* the facts underling the second litigation "had likely come to pass prior to [Serna's] filing of the amended complaint in her first lawsuit in August 2010, and certainly before she and the government voluntarily dismissed the case in August 2011." *Serna*, 559 F. App'x at 238.

Here, Plaintiff filed her *Mack I* Amended Complaint on October 31, 2012. Plaintiff learned of the denied promotion on August 19, 2013, *Mack II* Am. Compl. ¶ 25, and that her salary-equity-analysis request was on hold pending litigation on March 4, 2014, the date of Monts-Chamblee's deposition in *Mack I*, *id.* ¶¶ 20-21. Plaintiff responded to the *Mack I* defendants' dispositive motions on April 11 and 14, 2014; and the *Mack I* court granted summary judgment to defendants on March 23, 2015, ending that case.

Plaintiff argues she could not pursue the additional retaliation claims without first exhausting them administratively. However, a plaintiff is not required to exhaust retaliation claims that are—as here—based on the filing of a prior administrative charge. *See Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992). Accordingly, Plaintiff improperly focuses on the need for the 2014 Charge and a right-to-sue letter. *See Simpson v. U.P.S.*, No. CIV.A. 3:05-1500CMCBM, 2005 WL 3953697, at *3 (D.S.C. Oct. 28, 2005) *report and recommendation adopted* 2005 WL 3133023 (D.S.C. Nov. 21, 2005) *aff'd*, 173 F. App'x 249 (4th Cir. 2006) (noting administrative exhaustion unnecessary for additional claims of discrimination and

retaliation). In *Simpson* the court found res judicata prevented an employee from pursuing a second Title VII action against her employer after summary judgment was entered in favor of her employer in a prior Title VII action. The second action included a claim for retaliation that had not been included in the first case. Nonetheless, the court found the retaliation claim raised in the second matter "is asserted under Title VII and arises out of the same conduct complained about in *Simpson 1*." *Simpson*, 2005 WL 3953697, at * 3. *Id.* at n.3 (citing and quoting *Faggiano v. Eastman Kodak Co.,* 378 F. Supp. 2d 292, 303-04 (W.D.N.Y. 2005) ("finding res judicata where Plaintiff 'could have included a retaliation claim in his first lawsuit, which was still pending when he filed his second suit against the same party, alleging the same causes of action based on discrimination along with the additional retaliation claim.'"). Here, both *Mack I* and *Mack II* include a Title VII retaliation cause of action.

Plaintiff also argues she could not pursue the additional retaliation claims in *Mack I* because they arose after the scheduling-order-established deadline for amending pleadings had passed (February 13, 2013). Plaintiff's nod to the sanctity of court scheduling orders, Pl.'s Mem. 9, while perhaps well intended, is not enough to support her argument that the *Mack II* claims "could not have been brought" in *Mack I* because of timing. As in *Serna*, Plaintiff's *Mack I* Amended Complaint is broadly worded and readily encompasses both claimed incidents of retaliation raised in *Mack II*. *See Mack I* Am. Compl. ¶¶ 19-20 (claiming retaliation for opposition to discrimination caused her to be "overlooked and bypassed" for "appropriate adjustments and job descriptions and increases in pay"). Unquestionably, the *Mack II* claims concern that same subject matter and not "new" claims.

Plaintiff attempts to recast the *Mack II* claims as being different in that this action "at its core, concerns retaliation for filing and proceeding with *Mack I*; whereas *Mack I* concerned pay

11

discrimination and retaliation for requesting fair pay." Pl.'s Mem. 7. Her argument is unavailing. What a litigant calls a claim is not important. Rather, the court is to consider the underlying facts and determine whether the claims arise out of the same "transaction or series of transactions." *Pittston*, 199 F.3d at 704. Here, the undersigned finds they do.

It is noteworthy that both of the specific incidents made a part of the second EEOC charge and the instant suit arose while discovery was ongoing and over one year before the court's final judgment in *Mack I*. Plaintiff has pointed to no controlling authority indicating only claims that arose prior to the day a litigation is commenced can be foreclosed by res judicata. In *Serna*, the court noted the foreclosed claims may have existed before suit was filed but "certainly" existed before the case was dismissed. *Serna*, 559 F. App'x at 238.

In August 2013, Plaintiff became aware that a position for which she had applied was filled with a white male. It goes without saying that she was aware she had participated in the protected activity of filing the EEOC charge that led to *Mack I* at that time. Discovery in *Mack I* was underway and continued until March 4, 2014—almost two years after she became aware of the promotion issue. Further, Monts-Chamblee was deposed while discovery was ongoing, albeit on the last day of the discovery period. Nonetheless, counsel for all parties were present at that deposition, making her testimony about the salary-equity review unsurprising to all. In fact, in responding to Defendants' motions for summary judgment in *Mack I*, Plaintiff made specific note of the testimony she now attempts to make the keystone of a separate case. Plaintiff specifically noted, "HRD Monts-Chamblee testified that the salary equity analysis *has not been performed or further considered because of the pendency of this action* [*Mack I*]." ECF No. 45 *Mack I* (Pl.'s Opp'n Summ. J.) at 5 n.5 (emphasis added). Thus, while true that Monts-Chamblee's statement itself was not a part of the operative complaint in *Mack I*, nor did Plaintiff

request that it be included, it was a part of the evidence available to all parties in seeking and defending against summary judgment. By its very definition, it "could have been brought" in *Mack I. See Serna*, 559 F. App'x at 238 (finding res judicata and noting plaintiff had not attempted to litigate additional claims in first suit).

That Plaintiff made the decision to pursue a separate suit concerning the promotion and salary-equity claims does not impact the applicability of res judicata. *Puegot Motors of Am., Inc. v. Eastern Auto Distribs., Inc.,* 892 F.2d 355, 359 (4th Cir. 1989) ("Not only does res judicata bar claims that were raised and fully litigated, it 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'") (quoting *Brown v. Felsen,* 442 U.S. 127, 131 (1979)).

Defendant's Motion for Judgment on the Pleadings should be granted.

IV.    Conclusion

For the reasons set forth above, the undersigned recommends Defendant's Motion for Judgment on the Pleadings, ECF No. 17, be granted and this matter be ended.

IT IS SO RECOMMENDED.

March 18, 2016  
Florence, South Carolina

Kaymani D. West  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

13